IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-00062-BO

| | |
|---|---|
| **Michael A. Small**, Administrator of the Estate of Bertha Autry Small<br><br>Plaintiff,<br><br>v.<br><br>**Welldyne, Inc.,** et al.,<br><br>Defendants. | **Order** |

Plaintiff Michael A. Small, the Administrator of the Estate of Bertha Autry Small, requests that the court compel the Defendants to provide both additional and more detailed responses to the Estate's discovery requests. According to the Estate, WellDyne's responses and objections fall well short of what is required by the Federal Rules. After reviewing the responses and considering the arguments of the parties, the court largely agrees with the Estate's arguments. Because of its failure to comply with its discovery obligations, as set out in more detail below, WellDyne shall supplement many of its responses and explain why the court should not require it to pay the costs and fees that the Estate incurred in connection with this motion.

I.      **Background**

WellDyne Rx is a Florida company that fulfills prescriptions by mail. Bertha Small, a resident of North Carolina, was among the individuals who regularly received her prescription medication from WellDyne. In November 2013, WellDyne sent Bertha the wrong medications. Several days later, after taking the misdirected medications, she died. Represented by its Administrator, Michael Small, her estate sued, alleging that WellDyne's error caused Bertha's death.

The Estate served interrogatories, requests for admission, and requests for production of documents seeking a variety of documents and information related to its claims. WellDyne responded, objecting to several of these requests. The parties communicated back and forth in an effort to resolve their differences, and they resolved several issues with WellDyne filing four supplemental response. But they could not resolve their disputes for 16 interrogatories, 10 requests for production, and 14 requests for admission. The Estate filed two motions to compel, which are now before this court. The court held a hearing on the motions on February 21, 2017.

## II.    Discussion

The Federal Rules of Civil Procedure authorize parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). A matter is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence;" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if the discovery is relevant, it must still be proportional to the needs of the case. The Federal Rules set out several items the court should consider when assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### A.  General Objection on the Basis of Proportionality

WellDyne claims, as a general matter, that the Estate's discovery requests are not proportional to the needs of the case. But it does not provide any support for this assertion. Although the 2015 Amendments to the Civil Rules were enacted to bring greater attention to the importance of proportionality in the discovery process, they do "not . . . permit the opposing party

to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26, Advisory Committee Notes (2015 Amendment). A party raising a proportionality objection must include specific details in its objection that explain why the request is improper.

Also, general objections are an inappropriate response to interrogatories and requests for production of documents because the Federal Rules require parties to state their objections with specificity. Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."); Fed. R. Civ. P. 34(b)(2)(B) ("[T]he response must . . . state with specificity the grounds for objecting to the request, including the reasons.").

In light of WellDyne's failure to properly state or support its proportionality objections, these objections are overruled.

### B. Quality-Related Event Reporting Privilege

In its initial responses to the Estate's discovery, WellDyne claimed that it did not need to respond to Interrogatories 41 and 44 and Request for Production 44 because they sought documents and information that are immune from discovery under a Florida regulation related to pharmacy quality assurance programs. WellDyne has since supplemented its response to address the two interrogatories, but the dispute over Request for Production 44 persists. Similarly, WellDyne claims it does not have to answer Requests for Admission 36–47 because those requests seek information on reports sent to the Florida and North Carolina Boards of Pharmacy that it claims is also immune from discovery. The privilege WellDyne relies upon allows it to withhold some, but not all, of the documents and information requested by the Estate.

### 1.    Interrogatory 41

To begin with, Interrogatory 41 seeks information about any complaints that WellDyne's customers lodged with various governmental agencies dealing with other prescription medication

shipping errors made by WellDyne. Although WellDyne initially refused to produce this information, it supplemented its responses in October 2016 to indicate that no complaints were filed. Thus, the motion to compel a further response to Interrogatory 41 is denied as moot.

### 2. Interrogatory 44

Next, Interrogatory 44 seeks the identity of individuals that WellDyne terminated or disciplined as a result of prescription medication shipping errors. WellDyne's Supplemental Response abandons its previous objections and generally states that the individual who made the error at issue here has been terminated and that "[a]s to other incidents, several employees have been disciplined." D.E. 79 at 63–64. Because this response provides only a partial answer to the Estate's interrogatory, WellDyne shall supplement its response to provide the identity of each of these employees, what error they each made, and what action WellDyne took against them.

### 3. Request for Production 44

Request for Production 44 seeks any documents about Bertha's death that WellDyne submitted to Florida's Board of Pharmacy. WellDyne objects based upon both the privilege provided under Florida law for records maintained as a component of a pharmacy's continuous quality improvement program and a requirement under North Carolina law that requires out-of-state pharmacies to comply with their home state's statues and regulations. Neither of these provisions provide the complete exemption from providing responsive documents that WellDyne claims that it does.

The court will begin with WellDyne's argument about North Carolina's administrative code because the court can dispense with it quickly. WellDyne argues that a North Carolina regulation compels it to withhold these documents because they are immune from discovery. But this regulation does not provide it with immunity from discovery. Instead, it requires that "[a]n

4

out-of-state pharmacy shall comply with the statutes and regulations of the state in which the pharmacy is located." 21 N.C. Admin. Code 46.1607(d). Thus WellDyne's argument is mistaken because North Carolina's administrative code commands only *pharmacies* to comply with their home state's rules; it does not command *courts and third-parties* to also comply with those rules. And there is no Florida regulation that prohibits pharmacies from producing documents maintained in connection with a continuous quality improvement program, only a provision that authorizes a pharmacy to do so if it wishes.

Next, the court will turn to the more complicated issue of whether the Estate's discovery requests seek privileged documents and information. Florida law affords discovery immunity to records maintained as a part of a pharmacy's continuous quality improvement program. The parties dispute whether this immunity is applicable in this case, which is pending in a federal court in North Carolina. The Estate claims that the privilege is not applicable because state rules of procedure do not apply in a federal action. But because the substantive claims in this case are governed by state instead of federal law, state law will control on privilege issues. Ultimately, the court determines that North Carolina law applies to this matter and provides for a similar privilege to the documents and information the Estate requests. Thus, WellDyne may refrain from responding to some of Small's discovery requests because of the privilege that applies to a pharmacy's quality assurance program, but it must respond to others.

Rule 501 of the Federal Rules of Evidence governs matters of privilege. The relevant portion of the rule provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. When an issue arises for which a state's privilege law applies, courts apply the choice of law principles of the forum state. *See Metric Constructors, Inc.* v. *Bank of Tokyo-Mitsubishi, Ltd.*, No. 5:97-cv-369-BR, 1998

WL 1742589, at *1 (E.D.N.C. Sept. 28, 1998) (citing cases). Thus, North Carolina's choice of law principles determine whether North Carolina or Florida law governs this privilege dispute.

In cases involving tort claims in North Carolina, "matters affecting the substantial rights of the parties" are governed by the law of "the state where the injury occurred[]"; and "remedial or procedural rights" are governed by the law of the state where the plaintiff filed the case. *Mitchell* v. *HCL Am., Inc.*, 190 F. Supp. 3d 477, 488 (E.D.N.C. 2016) (quoting *Boudreau* v. *Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849 (1988)). Privilege issues are procedural in nature. *See Ashcraft* v. *Conoco, Inc.*, 218 F.3d 282, 282 n.5 (4th Cir. 2000) ("[T]he availability of an evidentiary privilege is governed by the law of the forum state."); *Frugard* v. *Pritchard*, 338 N.C. 508, 510, 450 S.E.2d 744, 745 (1994) ("The law of the forum, in this case North Carolina, governs as to the admissibility of evidence."); *Tennessee Carolina Transp., Inc.* v. *Strick Corp.*, 283 N.C. 423, 437, 196 S.E.2d 711, 720 (1973) ("[Q]uestions of the admission and exclusion of evidence are generally considered procedural[.]"). Thus, because this case is pending in North Carolina, its privilege rules will apply.

WellDyne claims that it does not have to respond to certain discovery requests because the Estate seeks documents and information that relate to its Continuous Quality Improvement Program. The relevant Florida regulation provides that "[r]ecords maintained as a component of a pharmacy Continuous Quality Improvement Program are . . . considered peer-review documents and are not subject to discovery in civil litigation or administrative actions." Fla. Admin. Code r. 64B16–27.300(5). Florida law requires its pharmacies to establish a Continuous Quality Improvement Program in an attempt to "identify and evaluate quality-related events and improve patient care. *Id.* at 64B16–27.300(1) & (3)(a). The term "quality-related events" refers to various

errors in filling prescriptions, including providing a patient with incorrect medication. *Id.* at 64B16–27.300(2).

Similarly, North Carolina law requires pharmacies to "establish or participate in a pharmacy quality assurance program . . . ." N.C. Gen. Stat. § 90–85.47(a). This provision applies to out-of-state pharmacies as well as those based in North Carolina. *Id.* The purposes of this requirement are to "enhance the quality of health care and reduce medication errors in this State by facilitating a process for the continuous review of the practice of pharmacy." *Id.* at §90–85.45. Among the issues that the quality assurance program must evaluate is "[t]he cause of alleged medication errors . . . ." *Id.* at § 90–85.47(a)(2).

Like its Florida counterpart, North Carolina law prevents parties from discovering or introducing the records of a pharmacy quality assurance program as evidence in a civil action. *Id.* at § 90–85.47(d) ("The proceedings of a pharmacy quality assurance program, the records and materials it produces, and the materials it considers shall be confidential . . . and shall not be subject to discovery or introduction into evidence in any civil action . . . ."). The North Carolina provision also parallels Florida law in that "information, documents, or records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the pharmacy quality assurance program." *Compare id.*, *with* Fla. Stat. §766.101(5) ("[R]ecords otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee . . . ."). Thus, the North Carolina privilege for pharmacy quality assurance program does provide some limitation on the types of documents and information that the Estate can obtain from WellDyne during the discovery process.

While the Estate may be limited in what discovery it can obtain from WellDyne's quality assurance program, that limitation does not mean that all of WellDyne's objections are proper or properly supported. For example, Request for Production 44 seeks documents that WellDyne sent to the Florida Board of Pharmacy related to Bertha's death. Although WellDyne objects on the basis that these documents are part of its quality assurance program,[1] it has provided the court with no information to support this claim; and the privileged nature of these documents is not apparent on the face of the discovery request, at least under the privilege invoked by WellDyne. *See Hammond* v. *Saini*, 367 N.C. 607, 610, 766 S.E.2d 590, 592 (2014) ("The party asserting the privilege has the burden to demonstrate each of its essential elements and cannot meet this burden by mere conclusory assertions.").

The court notes that in its response in opposition to the Estate's Motion to Compel WellDyne indicates that North Carolina's Administrative Code provides immunity from reports in the North Carolina Board of Pharmacy. Mem. in Opp'n at 5, D.E. 66 (citing 21 N.C.A.C. §46.1607(g)). But neither this provision nor a Florida counterpart were raised in its objections to the Estate's discovery requests. Therefore, these objections have been waived. *RLM Commc'ns, Inc.* v. *Tuschen*, 66 F. Supp. 3d 681, 704 (E.D.N.C. 2014), *aff'd,* 831 F.3d 190 (4th Cir. 2016).

Thus, WellDyne shall respond to Request for Production 44. If WellDyne claims that specific responsive documents are immune from discovery under the privilege for quality assurance programs, then it shall affirmatively indicate that it is withholding these records and provide a privilege log that complies with the Federal Rules of Civil Procedure.

---

[1] Florida law requires a Continuous Quality Improvement Program to compile a summary of all "quality-related events" that occur and any remedial measures undertaken by the Pharmacy. Fla. Admin. Code r. 64B16–27.300(5). The Florida Department of Health may review this summary on a periodic basis. *Id.* But there is no indication that this document is responsive to the Estate's discovery request or that it constitutes the entirety of documents about Bertha's death that WellDyne sent to the Florida Board of Pharmacy.

### 4. Requests for Admission

The Estate has served WellDyne with several requests for admission on reports submitted to the Florida and North Carolina pharmacy boards, as well as information about any errors in shipping medications to other patients.

#### a. Requests for Admission 36 and 37.

In Requests for Admission 36 and 37, the Estate asks WellDyne to admit whether it reported to the Florida Board of Pharmacy the shipping and dispensing errors at issue here. WellDyne objects to responding to this request on the same grounds as it objected to Request for Production 44. Again, WellDyne has failed to establish that reports sent to the Florida Board of Pharmacy are exempt from discovery as records of a quality assurance program. As a result, WellDyne must respond to these requests.

#### b. Requests for Admission 38–40 & 43–45.

In Requests for Admission 38–40 and 43–45, the Estate asks WellDyne to admit that, before November 16, 2013, it knew of at least five "quality-related events," as defined in Florida Administrative Code Section 64B16–27.300, that occurred at WellDyne or Exactus Pharmacy Solutions, Inc. Unlike other discovery requests, these requests for admission call for information that would be gleaned directly from the records of WellDyne's quality assurance program. *See* Fla. Admin. Code. Ann. r. 64B16–27.300(4) ("Each Quality-Related Event that occurs, or is alleged to have occurred, as the result of activities in a pharmacy, shall be documented in a written record or computer database created solely for that purpose."). Thus, WellDyne's objection to these requests for admission the objection is sustained.

### c. Requests for Admission 41, 42, 46 & 47.

Requests for Admission 41, 42, 46, and 47 seek admissions about the number of occasions since November 16, 2013, when WellDyne or Exactus shipped medication to the wrong patient. While the records of a quality assurance program are immune from discovery under North Carolina law, the underlying information is not, even if it is ultimately conveyed to the quality assurance program. N.C. Gen. Stat. § 90–85.47(d); *see Shelton* v. *Morehead Mem. Hosp.*, 318 N.C. 76, 83–84, 347 S.E.2d 824, 829 (1986) ("The statute is designed to encourage candor and objectivity in the internal workings of medical review committees. Permitting access to information not generated by the committee itself but merely presented to it does not impinge on this statutory purpose."). *Accord* Fla. Stat. 766.101(1)(b)(5) ("However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee . . . ."); *Mount Sinai Med. Ctr. of Greater Miami, Inc.* v. *Bernstein*, 645 So.2d 530, 532 (Fla. Dist. Ct. App. 1994) (allowing the discovery of information from an individual's personal knowledge that is relevant to the peer review process). Thus, the objection to these requests for production is overruled, and WellDyne shall provide a complete response to each one.

### C. Discovery Requests Regarding Delivery of Medication to Decedent

The following discovery requests seek a variety of information on how WellDyne processes prescriptions and mails pharmaceuticals to its customers.

### 1. Interrogatory 13

In Interrogatory 13, the Estate wants to know how WellDyne processed prescription drug orders, and WellDyne provided an answer. Def.'s Resp. at 4–5, D.E. 62–1. The Estate claims that WellDyne did not define some important terms (PV-1 and PV-2) in its response. Mem. in Supp.

at 5, D.E. 63. WellDyne replies that it provided the definitions of these terms by producing a separate document entitled "Pharmacist Verification Process." Mem. in Opp'n at 6–7, D.E. 66; *see also* Pharmacist Verification Process Ex. 6 at 1, D.E. 66–7.

Rule 33(b)(3) provides that parties must answer interrogatories "separately and fully in writing under oath." Courts interpreting this rule have held that, unless a party is invoking Rule 33(d), it is inappropriate to respond to an interrogatory by referencing other documents, pleadings, or discovery responses. *See Williams* v. *Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 501 (D. Kan. 2006); *Scaife* v. *Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000); *Mahoney* v. *Kempton*, 142 F.R.D. 32, 33 (D. Mass. 1992); *Martin* v. *Easton Pub'n Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980). It is important that parties include all of the relevant information in their responses because they are sworn statements while the other documents are not.

Because WellDyne impermissibly referenced an outside document, the court orders it to include the definition of these terms in a supplemental response.

### 2. Interrogatory 15

In Interrogatory 15, the Estate seeks to know how WellDyne processed the specific orders at issue here. Def.'s Resp. at 6, D.E. 62–1. WellDyne originally pointed the Estate back to Interrogatory 13 for its response. Mem. in Supp. at 7–8, D.E. 63. But in its brief in response to the motion to compel, WellDyne adds that it followed the process laid out in Interrogatory 13 "except, the shipper inadvertently placed the wrong label on the package." Mem. in Opp'n at 6–7, D.E. 66. WellDyne shall supplement its responses to include this extra information.

### 3. Interrogatories 23, 24, 25.

Finally, for Interrogatories 23, 24, and 25, the Estate wants additional details on how and why the order for the six drugs prescribed to Bertha (Lisinopril, Simvastatin, Diclofenac,

Levothyroxine, Hydrochlorothiazide, and Carvedilol) was canceled and rescheduled, including a definition of two terms used in related documents ("RX" and "user") (#23); how those drugs were finally disposed of (#24); and how and why the Renvela drug was diverted and not assigned (#25). Def.'s Resp. at 8–9, D.E. 62–1. WellDyne gave an overview of what generally happens in these types of scenarios, without providing any specifics to this case. Def.'s Resp. at 8–9, D.E. 62–1. In its brief, WellDyne argues that its responses in Interrogatories 23 and 24 are complete since it produced its "applicable technical manual and internal written policy." Mem. in Opp'n at 6–7, D.E. 66. But as already discussed in Interrogatory 13, WellDyne cannot refer to outside documents in its responses unless it is relying on Rule 33(d). It also did not provide answers to Interrogatories 23 and 25 that detail what happened with these specific drugs. And it failed to define the two terms in Interrogatory 23. Finally, even though WellDyne gave a case-specific response in Interrogatory 24, it does not detail, as requested by the interrogatory, who made the decision and under what authority that person acted. The court orders WellDyne to read these requests closely and to respond to each aspect of the three requests, which includes giving information specific to the medications at issue.

### 4.    Interrogatory 28

Next, in Interrogatory 28, the Estate asks WellDyne to identify everyone who has case-related information, along with a summary of that information. Def.'s Resp. at 10–11, D.E. 62–1. WellDyne offers the name of one person who knows about the "company's processes" and then says "there are too many [other people] to identify"; so it offers instead to provide them once the parties decide which issues are most relevant. Def.'s Resp. at 10–11, D.E. 62–1. WellDyne misunderstands the rules. Parties must produce "the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26, Advisory Committee Notes (2015 Amendment). This

very phrase was removed from the body of Rule 26 in 2015, but the advisory committee notes make it clear that it was removed because "[d]iscovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples." *Id.* And the notes add that discovery of this information "should still be permitted under the revised rule . . . ." *Id.* So the court grants the Estate's motion to compel for this issue and orders WellDyne to produce both the names of the "dozens" of relevant individuals, as well as a summary of what information they can provide.

### 5.  Request for Production 6

In Request for Production 6, the Estate seeks copies of all contracts that touch on the order processing at issue here. Def.'s Resp. at 31, D.E. 62–1. WellDyne produced its contract with Exactus, a co-defendant. *Id.* The Estate claims that it is not the full contract because it differs from the one it received from Exactus. Mem. in Supp. at 4, D.E. 63. WellDyne affirms that this contract is the complete version. Thus the Estate's motion to compel on this point is denied as moot.

### D.  Discovery Requests Regarding Investigation into the Shipping Error

WellDyne also objects to a number of the Estate's discovery requests on the basis that they seek information that was prepared in anticipation of litigation.

### 1.  Interrogatory 33

First, in Interrogatory 33, the Estate inquires whether WellDyne knows of any written or recorded statements made by a party or potential witness, along with the name of the person making the statement, the date that the person made the statement, and the identity and address of the person now in possession of the statement. WellDyne responded that "no one at WellDyneRx took any witness statements." Def.'s Resp. at 12–13, D.E. 62–1. But the statement that no one at

WellDyne took any witness statements neither confirms nor denies whether WellDyne knows of the existence of any witness statements. Thus, WellDyne's response is incomplete.

WellDyne's interrogatory response and its brief in opposition to the motion to compel both raise, in a cursory manner, the issue of whether the interrogatory calls for information that is immune from disclosure under the work product doctrine. Undoubtedly, the statements themselves may constitute work product, but the existence of a witness statement is not always shielded from discovery. Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring parties claiming work product doctrine to "describe the nature of the documents, communications, or tangible things not produced or disclosed"); Fed. R. Civ. P. 26, Advisory Committee Notes (2015 Amendment) (allowing discovery of "the existence . . . of any documents . . . and the identity and location of persons who know of any discoverable matter."); *see United States* v. *Exxon Corp.*, 87 F.R.D. 624, 638 (D.D.C. 1980) (rejecting a claim that work product protection allowed a party to refuse to state whether documents existed). WellDyne's brief invocation of the work-product doctrine does not establish that the requested information is immune from discovery. Thus, WellDyne shall respond fully to Interrogatory 33.

## 2. Request for Production 19

Next, Request for Production 19 seeks a variety of documents and other tangible items that memorialize events related to the shipping of incorrect medication to Bertha. WellDyne claims that the Request seeks information that is privileged for various reasons, but then it asserts that "all responsive documents not objected to are produced." D.E. 66–6 at 34.

WellDyne's substantive response runs afoul of the Federal Rules of Civil Procedure which require that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). WellDyne shall supplement its response to

this Request for Production of Documents to indicate whether it is withholding any documents. To the extent that it is withholding any documents on the basis of privilege, WellDyne shall produce a privilege log that complies with the requirements of the Federal Rules. *See* Fed. R. Civ. P. 26(b)(5)(A). Failure to produce a privilege log that complies with the rules will result in a waiver of the applicable privilege.

### 3. Request for Production 20

Finally, in Request for Production 20, the Estate seeks any written statements, communication, or correspondence that WellDyne has obtained from or that is related to Bertha. WellDyne initially objected on the basis of privilege, but it now asserts that "the only correspondence received from or on plaintiff's behalf consisted of correspondence from plaintiff's counsel." WellDyne's response does not encompass all the documents sought by this request. In addition to producing the correspondence received from the Estate's counsel, WellDyne shall produce any written statements, communications, or correspondence it obtained or received from any other person about Bertha from November 13, 2010, to the present. To the extent that it is withholding any documents on the basis of privilege, WellDyne shall produce a privilege log that complies with the requirements of the Federal Rules. *See* Fed. R. Civ. P. 26(b)(5)(A).

### E. Discovery Requests Regarding Business Operations

For these discovery requests, the Estate seeks a variety of information about WellDyne's business operations and its knowledge of past shipping errors.

### 1. Interrogatory 3

In Interrogatory 3, the Estate seeks information that it can use in support of its claim for punitive damages. Mem. in Supp. at 4, D.E. 63. It specifically wants to know of any other names WellDyne had done business under and when it used those names. Suppl. Resp. Ex. 3 at 2, D.E.

62–3. WellDyne's response: "Not in any time period relevant to this lawsuit." *Id.* It later clarified that its response was just for 2013, the most relevant time period because both the shipping error and death occurred that year. The Estate claims that it is entitled to this information to see if WellDyne had previously made similar shipping mistakes under a different name. Mem. in Supp. at 4, D.E. 63. WellDyne argues that this information is related to the Estate's punitive damages claim and is not relevant until the Estate survives a dispositive motion. The court disagrees. The Estate may need this information to rebut a dispositive motion on its punitive damages claim. As a result, the court orders that WellDyne produce all names under which WellDyne has done business and the time periods it used each of these names.

### 2.    Interrogatory 7

In Interrogatory 7, the Estate asks WellDyne to detail the "duration" of its business dealings with the other Defendants. Suppl. Resp. Ex. 3 at 3, D.E. 62–3. WellDyne produced its contract with Exactus, which it claims is a sufficient response. Suppl. Resp. Ex. 3 at 3, D.E. 62–3; Mem. in Opp'n at 8, D.E. 66. But, as discussed in relation to Interrogatory 13, Rule 33(b)(3) requires a party to answer each interrogatory "separately and fully in writing under oath." As the cases cited in Interrogatory 13 show, a party cannot fulfill this requirement by referencing outside documents. So the court orders WellDyne to provide a supplemental response detailing the duration of its business dealings with both Exactus and Comprehensive Health Management, Inc.

### 3.    Interrogatory 12

In Interrogatory 12, the Estate asks WellDyne to identify its business operations and activities. Def.'s Resp. at 4, D.E. 62–1. WellDyne referred the Estate to its answer to Interrogatory 2 which answers this question generally. *Id.* (citing 62–10, at 2). The Estate responds that this answer does not actually define these general activities. Mem. in Supp. at 5, D.E. 63. It added that

it believes, based on the terms it has seen, that WellDyne has more information that it is not providing. The court disagrees: the Estate did not ask WellDyne to define those activities, it only asked WellDyne to identify them, which WellDyne has done. So this portion of the motion is denied.

### 4. Interrogatory 39

Interrogatory 39 seeks details on any instances when a person notified WellDyne that it made a shipping error for prescription medications. After initially objecting on a variety of grounds, WellDyne supplemented its responses to indicate that there were no such instances. The Estate contends that its request also encompassed WellDyne's predecessors-in-interest. As noted above, the actions of WellDyne's legal predecessors-in-interest may be relevant to the Estate's claims. WellDyne shall supplement its response to Interrogatory 39 to include any responsive information relating to WellDyne's legal predecessors-in-interest from January 1, 2008, to the present. If there are none, WellDyne's supplement shall say so.

### 5. Interrogatory 40

The dispute over Interrogatory 40 is similar to Interrogatory 39, except that it pertains to lawsuits filed against WellDyne. For the same reasons as Interrogatory 39, WellDyne shall supplement its response to Interrogatory 40 to include any responsive information relating to WellDyne's legal predecessors-in-interest from January 1, 2008, to the present. If there is none, WellDyne's supplement shall say so.

### 6. Interrogatory 43

Interrogatory 43 seeks instances when WellDyne learned on its own that it had made an error in shipping a medication to a customer. The Estate claims that WellDyne has failed to produce any responsive information for the years 2008–2013. In response, WellDyne claims that

it does not have any responsive information for that time period. As the court cannot compel WellDyne to produce what it does not have, the motion to compel, for this interrogatory, is denied.

### F. Discovery Requests Regarding Renvela and Shipments to Sandra Dubois

Interrogatory 17 seeks information on WellDyne's activities in connection with shipping a prescription of Renvela to Bertha on November 16, 2013. WellDyne claims that the specifics of the November 16, 2013 shipment are irrelevant. But the Estate argues that it is entitled to know how WellDyne processed Renvela, which Bertha was supposed to receive, in comparison to how it processed the incorrect medications that she actually received. This information appears relevant to the Estate's claims, so WellDyne shall supplement its response to provide the requested information.

Request for Production 16 requests documents related to the prescription history for Sandra Dubois, the woman whose prescription was inadvertently shipped to Bertha. WellDyne originally objected to this request, but it has since withdrawn its objections and stated that the responsive documents "will be produced when located." To the extent it has not already fully responded to this request, it shall do so.[2]

### G. Discovery Requests Related to Punitive Damages

In Requests for Production 51 and 52, the Estate seeks documents related to its claim for punitive damages. Def.'s Resp. at 42–43, D.E. 62–1. WellDyne counters that before a court will order the defendant to produce this information, it first requires the plaintiff to survive a dispositive motion on its claim for punitive damages by showing that the defendant engaged in "willful or wanton conduct." Mem. in Opp'n at 9, D.E. 66 (citing *Yancey* v. *Lea & Huss*, 354 N.C. 48, 550

---

[2] WellDyne also objected to Interrogatories 39–41, 43–44, and Request for Production 46, claiming that HIPAA privacy laws protected this information. Because WellDyne chose not to provide any arguments supporting this objection in its briefs, the court will not address this issue. But if WellDyne needs protection for this information, then it can move for the court to enter a protective order.

S.E.2d 155 (2001)). It argues that its actions are nowhere near that type of conduct. Mem. in Opp'n at 9, D.E. 66. Courts typically allow discovery of these types of documents only after this punitive damages claim survives either a motion to dismiss or a motion for summary judgment. *Blount* v. *Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C. 1993). If the Estate's punitive damages claim either survives or is not the subject of a dispositive motion, then WellDyne must produce these documents within 14 days of either that order or the expiration of the dispositive motion deadline.

### H. Requests for Documents Related to Discovery Responses.

In Request for Production 12–14, the parties disagree over whether WellDyne should have to produce documents that it referred to or relied upon in answering the Estate's interrogatories and requests for admission. WellDyne incorporates by reference all of the objections made in its responses to the interrogatories and request for production, and then it states "all responsive documents not objected to are produced." As previously noted, these responses are inadequate. WellDyne must both state its objections specifically and indicate whether it is withholding any documents as a result of them. WellDyne shall supplement its answer to these requests for production accordingly.

### I. Remaining Requests for Admission

The parties also had a dispute over Request for Admission 49 and 50. After Small filed this motion, WellDyne supplemented its responses to deny these requests. Therefore, the motion to compel for these requests is denied as moot.

### J. Payment of Costs and Fees

Because the court has granted this motion to compel in part, the court must consider whether it should require WellDyne to pay the Estate's "reasonable expenses incurred in making

the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The court must first give WellDyne "an opportunity to be heard," so the court orders it to submit a memorandum of no more than 10 pages either explaining why its nondisclosures, responses, and objections were substantially justified or detailing any "other circumstances [that would] make an award of expenses unjust." *Id.* WellDyne must submit this document within 14 days of this order. The Estate will then have 14 days to respond.

## III. Conclusion

In sum, the Estate's Motions are granted in part and denied in part as follows:

1. WellDyne shall supplement its responses to Interrogatories 3, 7, 13, 15, 17, 23, 24, 25, 28, 33, 39, 40, and 44; Requests for Production 12, 13, 14, 16, 19, 20, and 44; and Requests for Admission 36, 37, 41, 42, 46, and 47 as directed in this order;

2. WellDyne shall produce a privilege log for any responses it claims are protected by attorney client privilege, work product doctrine, or any other applicable privilege (Requests for Production 19, 20, and 44);

3. If the Estate's punitive damages claim either survives or is not the subject of a dispositive motion, then WellDyne must produce the responsive documents in Requests for Production 51 and 52;

4. The motions to compel are denied as to all other requests;

5. WellDyne must show why the court should not require it to pay the costs and fees that the Estate incurred in connection with this motion as directed above; and

6. WellDyne must respond to the discovery request as modified by the court as soon as is practicable, but in any event, no later than 30 days after entry of this order. If it is in need of additional time to respond after making a good faith attempt to

comply (and if it cannot reach an agreement with the Estate on an extension), it may file a motion with the court requesting an extension of time to respond. The motion should outline the efforts made to comply with the order and the estimated amount of time it believes is necessary to fulfil its obligations under this order.

Dated:  June 8, 2017

Robert T. Numbers, II
United States Magistrate Judge