IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-62-BO

MICHAEL A. SMALL, Administrator of )
the Estate of Bertha Autry Small, deceased, )
)
                          Plaintiff, )
)
v.                                     )          O R D E R
)
WELLDYNE, INC., a Florida Corporation; )
WELLDYNERX, INC., a Florida )
Corporation; EXACTUS PHARMACY )
SOLUTIONS, INC., a Delaware )
Corporation, and DOES 1 through 5, )
inclusive, )
)
                         Defendants. )

This cause comes before the Court on defendants' motions for summary judgment and plaintiff's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also pending are several other motions, including a motion for leave to file out of time by plaintiff, motions to exclude testimony by the WellDyne defendants, and a motion to strike an affidavit by the WellDyne defendants. A hearing on these matters was held before the undersigned on February 7, 2018, at Raleigh, North Carolina. For the reasons that follow, defendants are entitled to summary judgment in their favor and the clerk is directed to close this case.

## BACKGROUND

### Procedural History

Plaintiff filed this action on December 28, 2015, in Cumberland County, North Carolina Superior Court. The matter was removed to this Court on February 8, 2016, on the basis of its diversity jurisdiction. 28 U.S.C. §§ 1332; 1441. On July 14, 2016, the Court denied a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by defendant Exactus and on January 27, 2017, the Court granted plaintiff's motion to file an amended complaint.

On November 22, 2017, plaintiff stipulated to the dismissal of count III, wrongful death – breach of implied warranty of fitness for a particular purpose and count VI, breach of the implied warranty of fitness for a particular purpose causing personal injury, against defendant Exactus. Accordingly, the following claims remain for adjudication: wrongful death – negligence against all defendants (count I); wrongful death – negligence per se against all defendants (count II); wrongful death – breach of the implied warranty of fitness for a particular purpose against the WellDyne defendants (count III); ordinary negligence causing personal injury against all defendants (count IV); negligence per se causing personal injury against all defendants (count V); and breach of the implied warranty of fitness for a particular purpose causing personal injury against the WellDyne defendants (count VI).

## Factual Background

Plaintiff Michael Small is the son of Bertha Autry Small (Ms. Small) and the administrator of her estate. The WellDyne defendants provide pharmacy benefits, claims processing services, and mail order pharmacy services. WellDyneRx operates nationwide and provides mail order prescriptions for health plans and other pharmacy benefit managers. In November 2013, Ms. Small was receiving prescription medication through her pharmacy benefit plan, Fresenius Medical Care Holding, Inc., which had contracted with WellDyneRx to provide central filling and home delivery services.

Exactus is also a mail order pharmacy. In January 2011, Exactus, formerly known as WellCare Specialty Pharmacy, entered into an agreement with WellDyneRx for the provision of certain pharmacy services. On November 15, 2013, Exactus received a prescription refill request

2

for six medications for a patient "S.D." who resides in California. Exactus submitted S.D.'s refill order to WellDyneRx with instructions for WellDyneRx to fill the order and ship it to S.D. in California. At or about the same time that WellDyneRx was processing S.D.'s prescription for Exactus, WellDyneRx was processing a prescription for Renvela, a medication related to kidney dialysis, for shipment to Ms. Small.

WellDyneRx has admitted that it inadvertently shipped the six medications intended for S.D. in California to Ms. Small in Fayetteville, North Carolina. A photograph of the six pill bottles shipped to Ms. Small and received on November 19, 2013, reveals that the label on each bottle of medication lists S.D. as the patient/recipient, that the prescription was filled by Exactus Pharmacy, and that the medication was prescribed by Dr. Michael Popkin. [DE 100-7]. The shipping label on the outside of the package received by Ms. Small was addressed to Bertha Small in Fayetteville, North Carolina. [DE 100-8]. The prescriptions shipped to Ms. Small in error were Hydrochlorothiazide, Carvedilol, Lisinopril, Simvastatin, Diclofenac, and Levothyroxine.

On November 22, 2013, Ms. Small was taken by ambulance to Cape Fear Valley Medical Center after she fell in her home and fractured her left tibia and fibula. Ms. Small was discharged from Cape Fear Valley Medical Center on December 23, 2013. She remained at home until January 2, 2014, when she died. Ms. Small's death certificate lists the immediate cause of death as pneumonia, with the following conditions leading to the cause of death: UTI, myocardial infection,[1] and end stage renal disease. [DE 100-10]. End stage renal disease is noted on the death certificate as the underlying cause, or the disease or injury which initiated the events resulting in death. *Id.*

---

[1] Although the Ms. Small's death certificate appears to state "myocardial *infection*", Dr. Baker refers to Ms. Small as having suffered myocardial *infarction* or a heart attack. *See, e.g.,* [DE 93-9] Baker Dep. at 122.

3

Evidence in the record relating to the receipt of the improperly mailed medications by Ms. Small includes the following. At the time relevant to the claims in this case, Ms. Small's adult daughter Shirley lived with her and Ms. Small was receiving prescription medications related to her dialysis through the mail; prior to delivery of her dialysis medications, the Small household would receive an automated telephone call advising of the delivery date. [DE 932-8] Small, Shirley Dep. at 33-34. In November 2013, two packages of prescription medication were delivered to Ms. Small. The first, which consisted of Ms. Small's prescribed medications, was attended with an automated telephone call as was the usual course. Small, Shirley Dep. at 49-51. Ms. Shirley Small retrieved the first package after it was delivered and gave it to her mother. Her mother did not need to put the pills in the pill sorter at that time because the delivery had been made early, seemingly in light of the holidays. *Id.* at 52. A second package of prescription medications was delivered to Ms. Small on or about November 19, 2013. No confirmation telephone call accompanied the second package, which was also retrieved by Ms. Shirley Small. *Id.* at 53. Ms. Shirley Small took the package to her mother's room and placed it on her dresser, as she always did; Ms. Shirley Small did not see her mother open the second package. *Id.* at 55-56. When her mother opened the second package of prescription medications the day after they arrived, Ms. Shirley Small thought that the colors of the pills did not look like her mother's normal pills, so she told her mother to set those pills to the side and to take the normal pills until she found out what the pills in the second shipment were for. *Id.* at 61. When Ms. Small opened the pill bottles from the second shipment and some of the pills popped out onto the floor and were not returned to the pill bottles. *Id.* at 62.

Also in evidence is the affidavit of Michael David, the fiancé of Ms. Shirley Small who lived in the Small household. [DE 126-7]. Mr. David attests that two or three days before Ms.

4

Small's fall in November 2013, and on the same day as the delivery of some medications, Ms. Small asked Mr. David to bring her a package from the top of her dresser. He did so, and observed Ms. Small take a number of pills out of the bottles and consume those pills. He also observed Ms. Small consume medications from the package on her dresser for the next couple of days. *Id.* David Aff. ¶¶ 8-12.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

At the outset, the Court grants plaintiff's motion for leave to file manual exhibit [DE 136] and motion for leave to file his responses to the motions for summary judgment one day out of time. [DE 144].

I.   North Carolina law applies to plaintiff's claims.

Plaintiff contends that Florida law applies to this case pursuant to the WellDyneRx Pharmacy Agreement between Exactus and WellDyneRx and the agreement between Fresenius and WellDyneRx, which both contain Florida choice of law provisions. Plaintiff contends that both agreements provide that they "shall be governed by and construed in accordance with the Law of the State of Florida without regard to its choice-of-law principles, and further construed without regard to any presumption or rules requiring construction against the party causing this agreement to be drafted." *See, e.g.,* [DE 93-1 at 10 of 19]. Plaintiff, who is not a party to either contract, has brought three types of claims against defendants – negligence, negligence per se, and breach of the implied warranty of fitness for a particular purpose.

When sitting in diversity, a federal district court applies the forum state's substantive laws, including its choice of law rules. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013). Under North Carolina law, tort claims are governed by law of the state where injury occurred or the tort was committed. *Boudreau v. Baughman*, 322 N.C. 331, 335 (1988). It is undisputed that Ms. Small's injuries occurred in North Carolina, and thus North Carolina negligence law applies.

Plaintiff's reliance on *Hitachi Credit America Corporation v. Signet Bank*, 166 F.3d 614 (4th Cir. 1999), to argue that the choice of law provision in the contracts should be extended to his tort claims is misplaced. In *Hitachi*, the court of appeals held that a Virginia choice of law provision in a contract would extend to those tort claims which were closely related to the contract in a case where the plaintiff brought both breach of contract and contract-related fraud claims,

6

noting that the choice of law provision at issue specifically indicated that the "parties intended to cover more than merely contract claims." *Id.* at 628. Here, plaintiff is not a party to the contracts, and the choice of law provisions include no indication that the parties intended anything other than contract claims to be governed by the choice of law provision. *See also Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 895 (D. Md. 2015) (distinguishing *Hitachi*, and noting that in *Hitachi* the contract-related fraud claim held to be governed by the choice of law provision would operate to invalidate entire agreement if proven).

Plaintiff's breach of implied warranty claims have been pleaded under North Carolina law, [DE 71] Amd. Cmpl. ¶¶ 58; 87, and plaintiff argues that North Carolina law should apply to his breach of warranty claims. [DE 133]. Accordingly, the Court will apply North Carolina law to each of plaintiff's claims.

II. Ms. Small was contributorily negligent as a matter of law.

The elements of a claim for negligence under North Carolina law are a legal duty, breach thereof, and injury proximately caused by the breach. *See, e.g., Bridges v. Parrish*, 366 N.C. 539, 541 (2013). It is well-established that, under North Carolina law, a finding of contributory negligence acts as a complete bar to recovery for another's negligence. *See, e.g., Burnham v. S & L Sawmill, Inc.*, 229 N.C. App. 334, 344 (2013); *Cameron v. Canady*, 157 N.C. App. 132, 134 (2003).

Ordinarily, contributory negligence is a question for the jury, but a determination that contributory negligence is present may be appropriate "where the evidence is uncontroverted that a party failed to use ordinary care and that want of ordinary care was at least one of the proximate causes of the injury." *Diorio v. Penny,* 103 N.C.App. 407, 408, (1991); *see also Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 401 (2001). "[C]ontributory negligence per se may arise where a

7

plaintiff knowingly exposes himself to a known danger when he had a *reasonable* choice or option to avoid that danger, or when a plaintiff heedlessly or carelessly exposes himself to a danger or risk of which he knew or should have known." *Lenz v. Ridgewood Assocs.*, 55 N.C. App. 115, 122–23 (1981) (emphasis in original, internal citation omitted). A finding of contributory negligence is based upon an objective standard; a plaintiff's "subjective appreciation of danger" is not at issue. *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673 (1980).

Although Ms. Small only completed the sixth grade in school and could not read well, Ms. Shirley Small testified that Ms. Small was very independent and could read her own name. Small, Shirley Dep. at 36. Plaintiff testified that his mother could not read a newspaper but that she was able to do puzzle books and read some mail. [DE 120-1] Small, Michael Dep. at 17. Ms. Small was also the representative payee for her daughters' and granddaughter's social security benefits, [DE 107-7][2], and paid the household's bills. Shirley Small testified under oath that she instructed Ms. Small not to take the medications that she had received on or about November 19, 2013, because they did not look like the pills she normally received and Ms. Shirley Small did not recall Ms. Small's doctors discussing any new medications. Small, Shirley Dep. at 61-63. There is no evidence that, prior to allegedly ingesting the mis-delivered medications, Ms. Small was suffering from hallucinations or was otherwise infirm so as to have been unable to recognize her own name. *See* [DE 120-1] Small, Michael Dep. at 25. It is also undisputed that the medication bottles mis-delivered to Ms. Small were correctly labeled with the intended recipient's name, S.D., and not Ms. Small's name.

---

[2] Plaintiff's response designates Shirley Small as the decedent's granddaughter and Michelle David and the decedent's great-granddaughter, but the record reflects that Shirley Small was the decedent's daughter and Michelle David the decedent's granddaughter. *See, e.g.,* [DE 120- 1] Small, Michael Dep. at 27.

Ms. Small failed to use ordinary care when she took prescription medications from bottles which were plainly marked as having been prescribed for another person. Ms. Small also failed to use ordinary care when she took the medications after her adult daughter, with whom she lived and on whom she relied to help care for her, instructed her not to take the medication until they had had an opportunity to examine them further. Taking prescription medication that has been prescribed for another person because of failure to read the prescription bottle is carelessly exposing oneself to a danger or risk of which Ms. Small knew or should have known.

Dr. Chaponda's affidavit,[3] offered by plaintiff on the issue of contributory negligence, does not create a genuine issue of material fact. Dr. Chaponda, Ms. Small's primary care physician, has offered an opinion that "it would not have been unreasonable for Ms. Small to assume that the medications that were shipped to her in November 2013 by WellDyneRx, Inc. were, in fact, medications her doctor(s) had prescribed for her to begin taking again." [DE 140-7] Chaponda Aff. ¶ 9. Dr. Chaponda bases this opinion, at least in part, on the fact that Ms. Small had in the past been prescribed three of the medications that she mistakenly received on November 19, 2013. However, whether or not Ms. Small had received those same medications in the past, the prescription bottle clearly identified "S.D." as the intended recipient of the medications, and no reasonable juror could conclude that Ms. Small did not carelessly expose herself to danger when she failed to examine the clearly labeled prescription bottles or took prescription medicines intended for another person. Moreover, Dr. Baker's opinion appendix notes that Ms. Small informed hospital staff on her arrival in November 2013 that her medications had not changed since her prior discharge from the hospital in August 2013. [DE 94-5 at 3]. Accordingly, the

---

[3] The WellDyne defendants have moved to strike the affidavit of Dr. Chaponda for failure to comply with the discovery rules. [DE 150]. Because Dr. Chaponda's evidence does not create a genuine issue of material fact, the Court denies the motion to strike as moot.

9

Court finds as a matter of law that Ms. Small was contributorily negligent and that her negligence claims, including her claims for negligence per se, are thus barred.[4] *See Brower v. Robert Chappell & Assocs., Inc.*, 74 N.C. App. 317, 320 (1985) (well established that contributory negligence operates as bar to claim of violation of statute or negligence per se). Summary judgment in favor of the WellDyne defendants on plaintiff's claims for breach of the implied warranty for a particular purpose is therefore also appropriate. *See Nicholson v. Am. Safety Util. Corp.*, 346 N.C. 767, 773 (1997) (citing N.C. Gen. Stat. § 99B-4).[5]

IV. Even if Ms. Small was not contributorily negligent, plaintiff has failed to establish proximate cause.

Plaintiff has further failed to create a genuine issue of material fact as to proximate cause. As noted above, a negligence claim requires a plaintiff to demonstrate a duty owed, breach of that duty, and that the breach was the proximate cause of the plaintiff's injuries.

> Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233 (1984). "Foreseeability is but one element of proximate cause," and other important considerations of proximate cause include:

> whether the cause is, in the usual judgment of mankind, likely to produce the result; whether the relationship between cause and effect is too attenuated; whether there is a direct connection without intervening causes; whether the cause

---

[4] Although WellDyne has not raised the defense of contributory negligence in its summary judgment motion, it has raised the defense in its answer to the amended complaint. [DE 77 at 15].
[5] In the alternative, summary judgment in the WellDyne defendants' favor is appropriate on plaintiff's breach of implied warranty claims because there is no evidence that Ms. Small purchased the mis-delivered prescriptions from WellDyneRx. *See* N.C. Gen. Stat. § 25-2-315 (governing implied warranty present where seller at time of contracting has reason to know of particular purpose for which goods are required and buyer is relying on sellers skill or judgment to select or furnish suitable goods).

10

was a substantial factor in bringing about the result; and whether there was a
natural and continuous sequence between the cause and the result.

*Williamson v. Liptzin*, 141 N.C. App. 1, 11 (2000) (citing *Wyatt v. Gilmore*, 57 N.C.App. 57, 59 (1982)).

In support of causation, plaintiff has proffered the expert opinions of Terrance Baker, M.D., M.S. and William Simonson, PHARMD. Dr. Baker's report states his opinion that the six mis-delivered medications that Ms. Small took between November 19, 2013, and November 22, 2013, more likely than not caused/contributed/lead to her death in January of the following year. [DE 94-3] Baker Rep. ¶ 14. Dr. Baker's opinion as to causation is based on his assumption that Ms. Small took one dose or more of each of the medications, but was based on no evidence that Ms. Small actually did so. [DE 94-4] Baker Dep. at 26. Dr. Simonson's opinion as to causation is that Ms. Small would have experienced significantly decreased blood pressure within one hour of taking Hydrochlorothiazide, Carvedilol, and Lisinopril, and that the medications dispensed in error caused or contributed to her serious hypotension, confusion, fall, leg fracture, and hospitalization with subsequent health conditions and negative outcomes. [DE 127-12] Simonson Rep. at 6-9. Dr. Simonson's opinions are also based on an assumption that Ms. Small had taken the mis-delivered medications, and specifically that she had taken the Hydrochlorothiazide, Carvedilol, and Lisinopril medications in combination. Simonson Rep. at 6. Dr. Simonson stated at his deposition, however, that he did not know what medications Ms. Small had consumed. [DE 96-4] Simonson Dep. at 31.

Importantly, "an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230 (2000) (quoting *Dean v. Carolina Coach Co.*, 287 N.C. 515, 522 (1975)). Where an expert opinion is based on speculation, it may be afforded no more value than layman opinion, which is insufficient

to qualify as "competent evidence on issues of medical causation." *Id.* Although plaintiff has attempted to rehabilitate his experts' opinions with the affidavit of Michael David, in which Mr. David attests to having seen Ms. Small ingest some amount of the mis-delivered prescriptions, Dr. Baker and Dr. Simonson did not have the benefit of Mr. David's affidavit at the time they rendered their opinions. For example, Dr. Baker relied on Shirley Small's assumption that her mother took some of the medications and the pill count, which was later determined to be unreliable after it had been discovered that an unknown number of pills had spilled. Dr. Baker's opinion also rests on his belief that Ms. Small took at least one dose of each of the three medications known to cause hypotension – Hydrochlorothiazide, Carvedilol, Lisinopril – however there is no evidence in the record that Ms. Small took any amount of any of the particular medications that had been mis-delivered. The expert opinions of Dr. Baker and Simonson are insufficient to create a genuine issue of material fact as to proximate cause. Accordingly, the Court need not consider the WellDyne defendants' argument they are appropriately excluded under Rule 702(b) of the Federal Rules of Evidence as they are not based on sufficient facts or data.

The Court further holds that, even considering the opinions of Drs. Baker and Simonson, the relationship between cause and effect is too attenuated such that plaintiff cannot demonstrate proximate cause. At his deposition, Dr. Baker summarized his opinion on causation as follows:

> When you have a patient such as Ms. Small who is historically stable, with several chronic illnesses, and you introduce acute hypotension, that is, under profusion of the brain, under profusion of the heart, under profusion of all vital organs in the body, you combine that with acute mental status change resulting in fall and fracture of two major bones, the left tibia and fibula, it puts a tremendous burden on the heart. The heart then experiences a myocardial infarction. The patient, as a result of impaired immunity, develops sepsis, i.e., blood infection. And as a direct and proximal result of sepsis, two major bone breaks and a brand new heart attack. All of which are complications of taking medications that arrived at her home in error and directly began a series of event [sic], a chain of events from which she will never recover.

Baker Dep. at 122. Ms. Small had several chronic illnesses, was unable to ambulate effectively without assistance, had a history of falling, and had a history of experiencing confusion and restlessness associated with prior stroke, episodes of pneumonia, and urinary tract infections. *See* Baker Dep. at 116-119. Even viewing the facts in the record in the light most favorable to plaintiff, Ms. Small's death on January 2, 2014, from end stage renal failure, myocardial infarction, urinary tract infection, and pneumonia was too far removed from her alleged consumption of some amount of mid-delivered medication having hypotensive effects between November 19 and November 22 2013. At most, the evidence in this case supports that the mis-delivery of medication to Ms. Small caused a "condition providing an opportunity for other causal agencies to act," and is therefore insufficient to support the necessary proximate cause for defendants to be found liable for negligence. *Kilpatrick v. Univ. Mall Shopping Ctr.*, 68 N.C. App. 629, 632 (1984).

IV. Liability may not be imputed to Exactus by theories of agency or joint venture.

Even if plaintiff could proceed on his negligence claims, liability could not be imputed to defendant Exactus. It is undisputed in this case that Exactus did not ship any medication to Ms. Small or request that any medication be shipped to Ms. Small. Thus, plaintiff has alleged that liability may be imputed to Exactus under theories of agency and joint venture/joint enterprise.

A. Agency

"The general rule is that an employer or contractee is not liable for the torts of an independent contractor committed in the performance of the contracted work." *Page v. Sloan*, 12 N.C. App. 433, 439 (1971), *aff'd,* 281 N.C. 697 (1972). Plaintiff has alleged Exactus' liability as deriving from its agency relationship with WellDyneRx. There are two essential elements required to demonstrate a principal-agent relationship: express or implied authority of the agent to act for

the principal and the principal's control over its agent. *Coastal Plains Utilities, Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 344 (2004) (citation omitted).

Beginning with the text itself, the agreement between Exactus and WellDyneRx defines their relationship as solely that of independent contractors, and states that nothing in the agreement should be construed to create any partnership, joint venture, or other relationship. [DE 93-1 at 7-8]. WellDyneRx has admitted that it was an independent contractor of Exactus, and it has further admitted that WellDyneRx and Exactus were not agents of one another and that Exactus did not manage or control how WellDyne or its employees carried out the details of any prescription order submitted by Exactus. [DE 93-4]. The provisions in the agreement between Exactus and WellDyneRx which address the standards by which WellDyneRx was to fill prescription orders, namely in a timely, accurate fashion, are insufficient to demonstrate sufficient control such that an agency relationship could be found. *See, e.g., Hylton v. Koontz*, 138 N.C. App. 629, 636 (2000) (general duties outlined in contract insufficient to reveal any control as required by principal-agent relationship). In sum, even viewing the facts in the record in the light most favorable to plaintiff, there is no evidence which would support a conclusion that Exactus had engaged in an agency relationship with WellDyneRx.

B. Joint venture/joint enterprise

> A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term.

*Pike v. Wachovia Bank & Tr. Co.*, 274 N.C. 1, 8 (1968) (quoting *In re Simpson*, 222 F.Supp. 904 (M.D.N.C. 1963)). Every member of a joint venture acts as an agent for his co-venturer and as a principal for himself. *Id.* "A joint enterprise is an alliance between two or more people in pursuit

of a common purpose such that negligence of one participant may be imputed to another." *Slaughter v. Slaughter*, 93 N.C. App. 717, 720 (1989). "The basic difference between a joint venture and a joint enterprise is that the former generally involves a business relationship, while the latter does not." *Lee v. Certainteed Corp.*, 123 F. Supp. 3d 780, 793 (E.D.N.C. 2015). As the instant facts plainly involve a business relationship between Exactus and WellDyneRx, the Court limits its consideration to the theory of joint venture.

To demonstrate that a joint venture between two entities exists, a party must show that there was an agreement to engage in a single business venture with the joint sharing of profits and that each party to the joint venture had an "equal right of control of the means employed to carry out the venture." *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 326 (2002) (citation omitted); *see also Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 670 (W.D.N.C. 2012). Even viewed in the light most favorable to plaintiff, the record supports that there was no agreement to engage in a single business venture and there was no equal right of control as between Exactus and WellDyneRx. *See* [DE 93-4] (admissions by WellDyneRx that there was no agreement to carry out single business venture, no joint sharing of profits, no mutual right to direct conduct of one another); [DE 93-5] Medure Dep. at 66-68. As noted above, each member of the joint venture must be able to act as an agent for the other venturers, and there is simply no evidence in this record which would support that Exactus and WellDyneRx were engaged in such a relationship.[6]

---

[6] Plaintiff also argues that he has sufficiently alleged that liability may be directly attributed to Exactus for negligence, but plaintiff has failed to sufficiently allege any duty owed to Ms. Small, who was not a customer of Exactus nor the intended recipient of the prescriptions Exactus sent to WellDyneRx to fill. While there are statutory duties imposed on pharmacies under North Carolina law, including rules pertaining to mail or delivery of prescription orders, which seek to ensure the safe and secure distribution of prescription drugs, *see* N.C. Gen. Stat. § 90-85.32; 21 N.C.A.C. 46.1607, plaintiff has nonetheless failed to establish any duty owed to Ms. Small by Exactus under these facts.

V.     Motion for partial summary judgment by plaintiff.

Plaintiff seeks summary judgment in his favor that, as a matter of law, defendants breached the duty of care owed to Ms. Small and that WellDyneRx's conduct should be imputed to Exactus as a matter of law. As discussed above, WellDyneRx's conduct should not, as a matter of law, be imputed to Exactus. Plaintiff's argument as to duty of care is moot in light of the Court's holdings on proximate cause and contributory negligence. Plaintiff's motion is therefore denied.

## CONCLUSION

Accordingly, for the foregoing reasons, the motion for summary judgment by Exactus [DE 92] is GRANTED; the motions to exclude the testimony of Dr. Baker [DE 90] and Dr. Simonson [DE 95] are DENIED AS MOOT; the motion for summary judgment by the WellDyne defendants [DE 97] is GRANTED; plaintiff's motion for summary judgment [DE 102] is DENIED; plaintiff's motions for leave to file out of time [DE 144] and for leave to manually file exhibit [DE 136] are GRANTED; and the motion to strike the affidavit of Dr. Chaponda [DE 150] is DENIED as MOOT. The clerk is DIRECTED to enter judgment in favor of defendants and close this case.

SO ORDERED, this 5 day of May, 2018.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE